**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE MANUFACTURED HOME LOT RENTS ANTITRUST LITIGATION | Case No. 1:23-cv-06715 |
| | District Judge Franklin U. Valderrama |
| | Magistrate Judge Beth W. Jantz |

**DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Datacomp Appraisal Systems, Inc., Equity Lifestyle Properties, Inc., Hometown America Management, L.L.C., Lakeshore Communities, Inc., Sun Communities, Inc., RHP Properties, Inc., Yes Communities, LLC, Inspire Communities, LLC, Kingsley Management, Corp., Cal-Am Properties, Inc., and Murex Properties, L.L.C., by and through their undersigned counsel, respectfully request that this Court stay discovery until after it rules on Defendants' forthcoming motion to dismiss. In support, Defendants state as follows:

**I.      INTRODUCTION**

Plaintiffs have asserted a massive, multi-year, nationwide conspiracy amongst Datacomp (a leading provider of valuation services and informative reports about manufactured home lots) and numerous operators who use Datacomp's reports ("Operator Defendants"), "to fix, raise, maintain, and/or stabilize lot rental prices for manufactured and modular homes" in 157 separate geographic areas. Consolidated Class Action Complaint (ECF No. 127) ("CAC") at ¶ 1. Yet, as Defendants will show in their forthcoming motion to dismiss (to be filed on January 29, 2024), Plaintiffs have not come anywhere close to alleging facts that could make these expansive claims plausible. Nevertheless, Plaintiffs insist on the right to serve Defendants with unbounded

discovery while Defendants' motion to dismiss is pending. In circumstances like these, courts routinely grant motions to stay discovery pending a ruling on a motion to dismiss.

Crucially, Plaintiffs have failed to allege that any Defendant had a "conscious commitment to a common scheme designed to achieve an unlawful objective," which is required for antitrust violations under Section 1 of the Sherman Act. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 343 (7th Cir. 2022) ("To plausibly allege an antitrust conspiracy, the Providers needed to show that 'the manufacturer and others had a *conscious commitment to a common scheme* designed to achieve an unlawful objective.'") (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)). Nowhere in the CAC is there a single allegation of any communication among any Operator Defendants regarding lot rental prices, nor are there any allegations that any Operator Defendants even raised prices in a parallel manner, acted against its own individual interest, or took any other action suggestive of a conspiracy.[1] Instead, Plaintiffs assert only that the Operator Defendants coordinated with each other "by purchasing and using market reports published by Defendant Datacomp." *Id.* at ¶ 5.

Purchasing and using Datacomp's reports does not in any way violate the antitrust laws. The Datacomp reports do *not* contain any advice or price recommendations of any kind, nor do they provide or facilitate the exchange of any confidential or other competitively-sensitive

---

[1] In fact, Plaintiffs' conclusory assertions of parallel pricing are contradicted by the very data they cite, which shows widely divergent pricing behavior by the various defendants. *See, e.g.*, CAC ¶ 148 (price increases ranged from 0% to 15.4% in Tampa – St. Petersburg – Clearwater; from -.6% to 12.9% in Riverside and San Bernadino Counties; and from 0% to 14.8% in Phoenix – Mesa – Scottsdale). These vast differences in pricing behavior are inconsistent with an agreement on price. Similarly, Plaintiffs' allegations regarding the actual rents charged show wide variations that are inconsistent with "uniform conduct of pricing by competitors," *In re Baby Food Antitrust Litigation*, 166 F.3d 112, 121 (3d Cir. 1999). *See, e.g.*, CAC ¶ 148 (2022 average adjusted rates in Tampa – St. Petersburg – Clearwater ranged from $479 to $909, almost a 100% difference; rents varied from $518 to $909 in Tampa – St. Petersburg – Clearwater).

information. To the contrary, they aggregate *publicly-available information*. Datacomp collects the majority of the data in its reports by contacting individual home lot operators and asking for their current rent information—the same way prospective tenants do. Additionally, the reports are available to *anyone* for purchase for a modest price, *without any conditions*, and are used throughout the industry, including critically by homeowners associations and residents (*i.e.*, members of the putative class) in their negotiations with manufactured home community owners and operators. The fact pattern here is a far cry from the few cases where information exchange allegations have been deemed sufficient for pleading purposes.

Given the serious deficiencies in the CAC, and weighed against the nationwide scope and breadth of the asserted claims, it would be inequitable and wasteful of party and judicial resources to allow discovery to proceed at this time. This is particularly true since this Court's decision on the forthcoming motion to dismiss will inform the scope of the case, and in turn discovery, even if it does not dismiss the case in its entirety.

Defendants had hoped to negotiate a compromise with Plaintiffs that would obviate the need for Court intervention. Specifically, in lieu of proceeding with discovery prior to a decision on the motion to dismiss, Defendants offered to produce some limited document discovery, and to negotiate various documents including an ESI protocol and a proposed protective order, so that discovery could begin promptly if the case were to proceed beyond initial motion practice. However, Plaintiffs would not agree to any compromise. Plaintiffs asserted they were, and still are, not in a position to identify any discovery they intend to seek while the motion to dismiss is pending and, therefore, will not agree to any limitation on the scope of discovery they might seek before the Court rules. Instead, Plaintiffs made clear they intend on serving fulsome document requests before negotiating any scope limitations. Thus, Defendants face the risk of having to

respond to highly burdensome discovery, which may turn out to be completely or partially unnecessary if the motion to dismiss is granted in full or in part.

In light of this impasse, and Plaintiffs' stated intention of promptly serving full discovery requests, Defendants respectfully move to stay discovery pending the Court's resolution of Defendants' motion to dismiss.

## II. ARGUMENT

### A. Legal Standard.

District courts enjoy broad powers in controlling discovery. *Gress v. Reg'l Transp. Auth.*, No. 17-CV-8067, (N.D. Ill. Jul. 20, 2020) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998). Under Federal Rule of Civil Procedure 26(c)(1), a court may limit the scope or timing of discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." While the mere filing of a motion to dismiss does not automatically stay discovery, in order to avoid costly and burdensome discovery when it is potentially unnecessary, "courts frequently stay discovery pending a motion to dismiss the complaint." *Aland v. U.S. Dep't of the Interior*, No. 22-CV-5821, 2022 WL 18027569 at *4 (N.D. Ill. Dec. 30, 2022). This is particularly true in antitrust cases. *See, e.g.*, *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-CV-1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) ("[T]he principles underlying *Twombly* counsel in favor of granting defendants' motion to stay[.]"); *Coss v. Playtex Prods., LLC*, No. 08-CV-50222, 2009 WL 1455358, at *1 (N.D. Ill. May 21, 2009) ("Antitrust cases are typical of the types of cases where discovery is so burdensome and costly to parties that a stay pending decision on a motion to dismiss may be appropriate."); *Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 11-CV-249, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (granting stay; "this is an antitrust case, which directly invokes the Supreme Court's concerns in *Twombly* about burdensome and expensive discovery"); *In re Graphics Processing Units Antitrust Litig.*, No. 06-CV-7417, 2007 WL

4

2127577, at *4 (N.D. Cal. July 24, 2007) ("[T]o allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery would be burdensome.").

In determining whether good cause exists to stay discovery pending a motion to dismiss, courts consider the following factors: "(1) whether a stay will prejudice the non-moving party, (2) whether a stay will simplify the issues in the case, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Liggins v. Reicks*, No. 19-CV-50303, 2021 WL 2853359, at *1 (N.D. Ill. Jul. 8, 2021).

**B.      There is Good Cause to Grant a Stay of Discovery Pending the Motion to Dismiss.**

As set forth below, Defendants easily satisfy all three good cause factors, and the Court should grant a stay of discovery pending the forthcoming motion to dismiss.

**(1)  A stay will not unduly prejudice or disadvantage Plaintiffs.**  Defendants will file their motion to dismiss in a little more than two weeks, on January 29, 2024.  The parties are well-aware of their evidence preservation obligations, and so there will be no prejudice or disadvantage to Plaintiffs from an interim stay while the Court reviews the sufficiency of Plaintiffs' CAC.  In stark contrast, Plaintiffs have indicated that they intend to serve fulsome discovery, which will be costly given the breadth of the nationwide, multi-year conspiracy that Plaintiffs allege among almost a dozen separate parties in 157 separate geographic markets.

**(2)  A stay will simplify the issues.**  Defendants' motion will raise potentially case-dispositive deficiencies in Plaintiffs' CAC.  The Court need not validate or speculate about the merits of Defendants' motion to dismiss at this time.  Rather, the fact that "the costs and burdens of discovery may prove unnecessary if the motion to dismiss is granted" is sufficient to weigh in favor of a stay.  *Liggins*, 2021 WL 2853359, at *3.

5

**(3)  A stay will reduce the burden on the Court and parties.**  Discovery in antitrust cases can easily become unwieldly and expensive, if left unchecked.  *See, e.g.*, *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-CV-1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) ("As the Supreme Court, the Seventh Circuit, and this court have all recognized, discovery in any antitrust case can quickly become enormously expensive and burdensome to defendants."); *Nexstar Broad., Inc.*, 2011 WL 4345432, at *2 (same); *Asahi Glass Co. v. Pentech Pharm., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation) (requiring that "some threshold of plausibility . . . be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").  "Post *Iqbal*, the policy against burdensome discovery in complex cases during the pendency of a motion to dismiss holds fast. . . . If the complex case is one susceptible to the burdensome and costly discovery contemplated by *Bell Atlantic* and *Iqbal*, the district court should limit discovery once a motion to dismiss for failure to state a claim has been filed."  *Coss*, 2009 WL 1455358, at *3.

Here, Defendants sought to negotiate a compromise with Plaintiffs in lieu of filing this Motion.  Plaintiffs, on the other hand, rejected any compromise—saying only that they could not, as of days ago, identify any materials they wanted or limitations on discovery that they would accept.  Over a dozen Plaintiffs from seven different states have sued 11 Defendants, alleging a sprawling antitrust conspiracy spanning multiple years and covering potentially thousands of mobile home communities in 157 separate alleged geographic markets spread across the nation.  Discovery undoubtedly will be extremely burdensome, all the more so given that this is a putative class action.  *See Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671, 2016 WL 8737774, at *2 (D. Colo. Nov. 4, 2016) ("The fact that this is a nationwide class and collective action involving at least one thousand and probably more putative plaintiffs weighs in favor of a stay.").  Defendants

should not be put to the substantial expense of engaging in such discovery, and the Court should not have to expend resources tailoring this process, unless and until this Court determines that the CAC survives the pleadings stage.

**III.    CONCLUSION**

WHEREFORE, Defendants respectfully request the Court stay discovery pending resolution of Defendants' forthcoming motion to dismiss.

## <u>LOCAL RULE 37.2 CERTIFICATION</u>

Defendants certify that they have satisfied the requirements of Local Rule 37.2 to meet and confer with counsel for Plaintiffs in good faith before filing this Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss, and have determined that the matter upon which a ruling is sought is actually in dispute. On December 27, 2023, and January 5, 2024, representatives for the parties met and conferred regarding the subject matter of this Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss but reached an impasse. Brian Hogan and Karin Garvey from DiCello Levitt, Liaison Counsel for Plaintiffs, participated on behalf of Plaintiffs. Lawrence Buterman from Latham and Watkins LLP, counsel for Defendants Datacomp Appraisal Systems, Inc., and Equity Lifestyle Properties, Inc., and Steven Blonder from Much Shelist, P.C., counsel for Defendant Kingsley Management, Corp., participated on behalf of Defendants.

Dated: January 12, 2024

Respectfully submitted,

By: *Lawrence E. Buterman*
LATHAM & WATKINS LLP

Lawrence E. Buterman (pro hac vice)
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
lawrence.buterman@lw.com

Gary Feinerman (IL 6206906)
Brittany M. Liesman (IL 6336682)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-777-7110
gary.feinerman@lw.com
brittany.liesman@lw.com

Sadik Huseny (pro hac vice)
300 Colorado St., Suite 2400
Austin, TX 78701
Telephone: 737-910-7300
sadik.huseny@lw.com

Belinda S Lee (pro hac vice)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
belinda.lee@lw.com

*Attorneys for Defendants Datacomp Appraisal
Systems, Inc. and Equity LifeStyle Properties,
Inc.*

ARMSTRONG TEASDALE LLP

By: */s/ Stephen J. Siegel* (w/ consent)
Stephen J. Siegel
Julie Johnston-Ahlen
100 North Riverside Plaza
Chicago, IL 60606
Telephone: 312-419-6900
SSiegel@atllp.com

9

JJohnston@Atllp.com

HOGAN LOVELLS US LLP

William L. Monts III
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: 202-637-5600
william.monts@hoganlovells.com

*Attorneys for Defendant Cal-Am Properties, Inc.*


WINSTON & STRAWN LLP

By: */s/ James F. Herbison* (w/ consent)
James F. Herbison
Michael P. Mayer
35 West Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
JHerbiso@winston.com
MMayer@winston.com

*Attorneys for Defendant Hometown America Management, L.L.C.*


BRYAN CAVE LEIGHTON PAISNER

By: */s/ Timothy R. Beyer* (w/ consent)
Timothy R. Beyer (*pro hac vice*)
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: 303-866-0481
Tim.beyer@bclplaw.com

Sarah L. Hartley (*pro hac vice*)
1155 F Street N.W.
Washington, D.C. 20004
Telephone: 303-866-0363
Sarah.hartley@bclplaw.com

Ashley Hyun-Jeong Kim
161 N. Clark Street, Suite 4300

10

Chicago, IL 60601
Telephone: 312-602-5113
Ashley.kim@bclplaw.com

*Attorneys for Defendant Inspire Communities,*
*LLC*

MUCH SHELIST, P.C.

By: */s/ Steven P. Blonder* (w/ consent)
Steven Blonder
Laura Ann Elkayam
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312-521-2402
sblonder@muchlaw.com
lelkayam@muchlaw.com

*Attorneys for Defendant Kingsley Management,*
*Corp.*

SHOOK, HARDY & BACON L.L.P.

*By: /s/ Lynn H. Murray* (w/ consent)
Lynn H. Murray
Kailin Liu
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone: 312-704-7700
lhmurray@shb.com
kliu@shb.com

Ryan Sandrock
555 Mission St.
San Francisco, CA 94105
Telephone: 415-544-1900
rsandrock@shb.com

*Attorneys for Defendant Lakeshore*
*Communities, Inc.*

SIVYER BARLOW WATSON & HAUGHEY, P.A.

*By: /s/ Mahlon Herbert Barlow, III* (w/ consent)
Mahlon Herbert Barlow, III (*pro hac vice*)
401 E. Jackson Street
Suite 2225
Tampa, FL 33602
Telephone: 813-221-4242
mbarlow@sbwhlegal.com

*Attorneys for Defendant Murex Properties, L.L.C.*


HONIGMAN LLP

By: */s/ David Ettinger* (w/ consent)
David Ettinger (*pro hac vice*)
660 Woodward Avenue
Detroit, MI 48226
Telephone: 313-465-7368
dettinger@honigman.com

William B. Berndt
155 North Upper Wacker Drive
Suite 3100
Chicago, IL 60606
Telephone: 312-701-9376
wberndt@honigman.com

*Attorneys for Defendant RHP Properties, Inc.*


SIMPSON THACHER & BARTLETT LLP

By: */s/ John Terzaken* (w/ consent)
John Terzaken (*pro hac vice*)
Abram J. Ellis (*pro hac vice*)
Joshua Hazan (*pro hac vice*)
900 G Street NW
Washington, D.C. 2001
Telephone: 202-636-5579
john.terzaken@stblaw.com
aellis@stblaw.com
Joshua.hazan@stblaw.com

TAFT STETTINIUS & HOLLISTER LLP

Kim R. Walberg
Elizabeth A. Winkowski
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone: 312-527-4000
kwalberg@taftlaw.com
ewinkowski@taftlaw.com

*Attorneys for Defendant Sun Communities, Inc.*


WILLIAMS & CONNOLLY LLP

By: _/s/ Jonathan B. Pitt_ (w/ consent)
Jonathan B. Pitt
725 12th St NW,
Washington, D.C. 20005
Telephone: 202-434-5341
jpitt@wc.com

*Attorneys for Defendant Yes Communities, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 12, 2024, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.

Dated:  January 12, 2024

By: _/s/ Lawrence E. Buterman_
LATHAM & WATKINS LLP

Lawrence E. Buterman (pro hac vice)
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
lawrence.buterman@lw.com

14