UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE MANUFACTURED HOME LOT RENTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br>All Class Actions | Case No. 1:23-cv-06715<br><br>Hon. Franklin U. Valderrama<br><br>Magistrate Judge Beth W. Jantz |

### DECLARATION OF MICHAEL BOERS
### IN SUPPORT OF MOTION TO STAY DISCOVERY

I, Michael Boers, declare as follows:

1. I am a United States citizen over the age of eighteen and am competent to make this Declaration.

2. If called upon as a witness, I could testify to the following matters:

3. I am the Co-President, Chief Technology Officer, and Chief Operating Officer of Datacomp, Inc. Datacomp is a small company of fewer than 35 employees, and the JLT Report team specifically consists of 5-7 full-time employees, including myself.

4. In my role, I am responsible for, among other things, organizing and maintaining data used in JLT Market Reports, as well as overseeing and maintaining customer records.

5. I have knowledge of the types of data and information Datacomp maintains in the ordinary course of business, the location of such data, and the logistics of collecting, reviewing, and producing such data.

6. I submit this declaration upon personal knowledge in support of Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss in the above-captioned case (ECF No. 144).

1

7. This declaration focuses on Plaintiffs' Request for Production ("RFP") Nos. 6 and 7, and addresses the difficulty of collecting, compiling, reviewing, and producing data responsive to these requests.

### RFP No. 6 Regarding JLT Reports and Structured Data

8. RFP No. 6 seeks all JLT Market Reports (as that term is defined in Plaintiffs' RFPs) and the structured data used to generate those reports since January 1, 2014.

9. Since January 1, 2014, Datacomp has produced over 1,600 JLT Market Reports, which includes both (a) ordinary course, periodic reports as well as (b) custom reports generated for specific customers that seek information for certain markets or time periods not necessarily available in any other single report.

10. Datacomp's reports cover over 180 different geographic regions in the United States across over 35 states.

11. The PDF versions of these 1,600+ reports would total over 75,000 pages.

12. Datacomp maintains the data underlying each of these 1,600+ reports in a sophisticated relational database system that powers many aspects of Datacomp's operations, including our appraisal and inspection products. Specialized, custom written programs translate the data stored in the database system to create a PDF or Excel version for a single report. Datacomp could not export all of this data into a reasonable single file and produce it, as Plaintiffs appear to request.

13. The simplest method of providing the "structured data used to generate" the JLT Market Reports would be to generate 1,600 individual Excel spreadsheets. Those spreadsheets would consist of over 13 million individuals datapoints drawn from over 47,000 community-level surveys of mobile home communities nationwide. Creating these 1,600 spreadsheets and

2

organizing the files into a useful directory structure would require over 200 hours of Datacomp employee time.

14. However, in my view, one could not conduct any sort of meaningful analysis from data provided in this manner—*i.e.*, in hundreds of different spreadsheets—as each spreadsheet has a unique column structure that reflects the nature of the data contained in that report.

15. Recently, Datacomp explored combining certain data into a single spreadsheet over a time period similar to that requested by Plaintiffs, but for only a single state. For multiple reasons (including the fact that data fields between reports are not standardized), one of the developers under my direction has spent at least 30 hours attempting to write a program that would combine the data so that it would appear in at least a minimally useful format. In addition to continued analysis, actually building and running computer programs to combine the data would take many additional hours, for a total of at least 50 hours of my and the developer's time.

16. I should emphasize that Datacomp undertook that analysis for only a single state. Datacomp reports cover numerous different regions throughout over 35 states. Therefore, in order to comply with Plaintiffs' RFP No. 6, which requests *nationwide* structured data, the project would scale exponentially, as additional reports create both additional rows and columns to the resulting document. The amount of work this would take and the size of the resulting spreadsheet is beyond any sort of accurate estimate, but it would take hundreds and possibly thousands of hours and might require hiring an additional developer and other staff to complete this task in a timely manner, at enormous cost to the company and disruption to its normal operations. It is not even clear to me that it would be possible as a practical matter to combine all of the information used to generate 1,600+ reports into a single spreadsheet based on limitations with company resources and computing power.

17. Finally, in addition to preparing the data, RPF No. 6 calls for data dictionaries to ensure that Plaintiffs can properly interpret the data. Datacomp does not maintain such documents in the ordinary course of business, so it would have to create them. For me, this would take about 40 additional hours. If I had another employee do this, it would likely take them at least 100 hours.

18. As the Co-President, CTO, and COO of the company, I would not be able to dedicate more than a few hours each week to these projects. Thus, without help, I estimate it would take me over a year to complete all of the tasks described above. With help from numerous other employees, potentially including employees that we would have to hire to assist with this endeavor, spending considerable amount of their working time on these tasks, we may be able to get it done slightly faster. Either way, complying with Plaintiffs' requests for the JLT Market Report data would cost hundreds of thousands of dollars in Datacomp employees' time.

### RFP No. 7 Regarding Customer Information

19. Plaintiffs' RFP No. 7 seeks voluminous materials related to Datacomp's customer interactions, some of which Datacomp maintains and some of which it does not.

20. First, Datacomp does not maintain comprehensive information about its customers' legal names, state of incorporation, or principal place of business, and we do not have a single database or other aggregated information repository about purchasers of JLT Market Reports.

21. With respect to the request for "all Communications between a prospective, current, or past person or entity and Defendant(s) regarding the order, purchase, or acquisition of a JLT Market Report," such communications are not stored in a central repository. Datacomp would need to collect emails and other documents from multiple employees, search through them for relevant documents, and produce them.

4

22. Even if Plaintiffs limited this request only to "customer lists," Datacomp has multiple different types of customers who purchase different reports, and information about these customers is stored in different locations. In general, these customers can be broken down into (1) subscribers, (2) online purchasers from Datacomp's web store, and (3) customers that seek custom data projects.

23. Our online purchaser data is generally available through our Shopify account. Our subscriber data and custom data projects are available for a more limited time period through our Quickbooks account. However, older custom-project data and subscriber data is stored in an archived accounting system that would take dozens of hours for me to search through. Further, for customer data in all systems, it would take dozens of additional hours to run quality control checks to ensure the exported lists were fully comprehensive.

24. I also understand Plaintiffs seek "information sufficient to identify the year and MSA analyzed by the JLT Market Report purchased or otherwise acquired by" each customer. To provide this information for each customer, I would have to sort through in Quickbooks each of the hundreds of custom data projects we have performed for customers over the last five years, plus over 200 subscriptions, and compile this information individually for each customer. I estimate it would take at least 250 hours to do this for all of the subscribers and custom data customers.

25. Moreover, for the custom data projects, Datacomp would have to review any customer information for any personally identifiable information and consult legal counsel to ensure the provision of customer data did not violate any state or federal privacy laws.

26. All of the timing estimates in this declaration are for my own time, as I am the Datacomp employee most likely/best suited to perform these tasks most efficiently. If anyone else

besides me at Datacomp were to attempt to perform these functions, I would need to spend significant time training them and it would likely take them 2x or 3x as long to complete the task.

27. This analysis represents my best effort to compile and present information about the potential time and costs required for Datacomp to comply with Plaintiffs' discovery requests directed to Datacomp, based on the information available to me at the time of this declaration.

28. In sum, Plaintiffs seek an enormous amount of information from Datacomp. Providing the information Plaintiffs seek in any format that is minimally useful to them—on a nationwide basis for over a decade—would impose an enormous burden on Datacomp. Adequately responding to these requests would divert the resources of a small company for many months and cause a potentially catastrophic disruption to our normal operations.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of March, 2024, at _Caledonia, Michigan_.

_Michael Boers_
Michael Boers